RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE ___8 / 6 / 09___

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| CHARLES BULL, JR and PHOEBE F. BULL | * | CIVIL NO. 2:07-CV–1595 |
| VERSUS | * | JUDGE RICHARD T. HAIK |
| ALLSTATE INSURANCE CO., ET AL | * | MAGISTRATE JUDGE HILL |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REASONS FOR JUDGMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### A.    Facts

This case involves allegations of non-payment of a flood insurance claim against the Standard Flood Insurance Policy ("SFIP") issued by Allstate Insurance Company. The flood policies at issue allegedly afforded Plaintiffs, Charles Bull, Jr. and Phoebe F. Bull, flood insurance coverage over their two adjacent waterfront properties in Cameron Parish, LA. Both properties were completely destroyed by damages sustained during Hurricane Rita. The Defendants named in this lawsuit are Allstate Insurance Company and Allstate Agent Teri Fear.

The Bulls own two adjacent waterfront properties located at 2431 Egret Street and 2435 Egret Street in Holly Beach, LA. On August 25, 2005, Mr. Bull applied for and Allstate prepared two separate Allstate Flood Insurance Applications for the two properties through Allstate insurance Agent Teri Fear. Allegedly, Ms. Fear verbally informed the Bulls at the time of

application that the premiums on the two policies would be due at the closing of the loan for the 2435 Egret Street property. She also allegedly went as far as to write a handwritten note in her file which read, "Funds paid @ closing # new camp. 2435." (Court Doc. 19-4, Exhibit F)

Also on August 25, 2005, Allstate issued two Certificates of Proof of Application for Flood Insurance for both of the Egret Street properties. Mrs. Fear gave Mr. Bull both certificates at that time. The certificate for the 2435 Egret Street property (ID # 706466144), dated August 25, 2005, sought coverage in the amount of $40,000.00 for the building structure with no contents coverage. This application for a SFIP was in connection with a loan on the 2435 Egret Street property. The annual premium quoted for this application was $501.00.

The certificate for the 2431 Egret Street property ( ID # 706466652), dated August 25, 2005, sought coverage in the amount of $60,000.00 for the building structure with no contents coverage. The annual premium quoted for this application was $688.00. Unlike the application for the 2435 Egret Street property, the application for the 2431 Egret Street property sought a wholly new policy not in connection with any loan. Unlike the 2435 Egret Street policy, which would become effective at the time the loan securing it was closed, the $688.00 premium due on the 2431 Egret Street policy had to be paid within thirty days from the August 25, 2005 date of application in order to be effective pursuant to 44 C.F.R. § 61.11©. September 24, 2005 is exactly thirty days after Mr. Bull's August 25, 2005 date of application. September 24, 2005 is also the day Hurricane Rita made landfall. Allstate did not receive any premium payment for the 2431 Egret Street application either on August 25, 2005 or any time prior to September 24, 2005. (See Court Doc. 17, par. 7).

On August 29, 2005, Hurricane Katrina came ashore in Southeast Louisiana.

On September 24, 2005, thirty days after the application and issuance of the Certificates of Proof of Application for Insurance, Hurricane Rita made landfall in Cameron Parish completely destroying the 2431 and 2435 Egret Street properties. Cameron State Bank, the bank which secured the loan documents for the 2435 Egret Street property, was also completely destroyed. Due to the devastation from Hurricane Rita, the bank subsequently pushed back the closing date of the 2435 Egret Street property. Based on Agent Fear's alleged statements to the Bulls regarding the premiums on both properties being due at the closing of the 2435 Egret Street property, the Bull's believed in good faith that the dates of collection of the premiums for *both* policies were also pushed back to the date of the loan closing on the 2435 Egret Street property.

The closing for the 2435 Egret Street property was in November 2005. On November 23, 2005, Mr. Bull wrote a check for $501.00 for the premium for the 2435 Egret street property. On the same day, Mr. Bull wrote a check for $688.00 for the premium on the 2431 Egret Street property; however, he later voided it due to the belief that Cameron State Bank had paid the premium. The words "Void paid by bank" appear on the voided check. This reference referred to a mortgage loan closing of which $501.00 was to be paid on the Bulls' Proof of Application for Insurance for the 2431 Egret Street policy. On December 2, 2005, Cameron State Bank paid an additional premium payment of $501.00 to Allstate; however, the bank did not designate which policy it should be applied to. Jason Raske, Team Flood Leader for Allstate Insurance Co., stated that Allstate's regularly kept business records indicate this premium payment was tendered in late November or early December. (Court Doc. 17-3, par. 8).

In January 2006, Allstate issued an SFIP to the Bulls covering the 2435 Egret Street property. This SFIP bore policy # 2800705614, with effective dates of coverage designated as

August 26, 2005 (retroactively) to August 26, 2006 and having coverage limits of $40,000.00 for the building and no contents coverage. SFIP # 2800705614 was printed by Allstate on January 9, 2006 and received by the Bulls on January 17, 2005. (Court Doc. 19-4, Exhibit J).

In early February 2006, Allstate issued a second SFIP to the Bulls in response to the additional premium payment of $501.00 tendered by Cameron State Bank to Allstate on December 2, 2005. This SFIP bore policy # 3800600607 and *also* covered the 2435 Egret Street property even though Allstate's Team Flood Leader, Jason Raske, stated that the $501.00 payment from the Bank was intended by Mr. Bull to apply to the SFIP covering the 2431 Egret Street property. (Court Doc. 17-3, par. 8). Allstate then generated a Declarations Page based upon this information with the effective dates indicating coverage from August 26, 2005 (retroactively) to August 25, 2006 (same effective dates as the original 2435 Egret Street SFIP). The second 2435 Egret Street SFIP was mailed to the Bulls on February 8, 2006. Mr. Raske stated that these effective dates were given because a policy period was already in the computer system; however, also according to Mr. Raske, these dates were issued in error thereby allegedly making the second 2435 Egret Street SFIP ineffective on the day Rita hit, September 24, 2005. (Court Doc. 17-3, Aff. of Raske, par. 8). *No policy was ever issued for the 2431 Egret Street property.*

After Hurricane Rita, Allstate adjusted the loss at the 2435 Egret property under the sole existing policy and paid the policy limits. On August 23, 2006, Mr. Bull sent a letter to Allstate outlining the duplicate policies and requesting additional coverage under Section U of the policy entitled "Duplicate Policies Not Allowed." Section U prohibits duplicate policies issued on the same property. However, Section U contains an exception to this prohibition by stating that "if

we find that the duplication was not knowingly created, we will give you written notice. The notice will advise you that you may choose one of the following (two) options." Both options allow the insured to choose which of the duplicate policies he/she wishes to keep in effect. "Option a.." gives the insured a choice to keep in effect the policy with the earlier effective date while simultaneously adding the coverage limits of the later policy. "Option b." gives the insured a choice to keep in effect the policy with the later effective date while simultaneously adding the coverage limits of the earlier policy to the later policy. In either case, the change becomes effective as of the effective date of the later policy. Regardless of which option the insured chooses, "(the insured) must pay the pro rata premium for the increased coverage limits within 30 days of the written notice." (Court Doc. 19-5, Exhibit L, pg. 55).

On September 21, 2006, Allstate sent Mr. Bull a letter stating that the duplicate 2435 Egret Street SFIP was cancelled due to the issuance of duplicate policies, such cancellation being retroactive to August 26, 2005 (prior to Rita). Also on September 21, 2006, Allstate issued Mr. Bull a check for a return premium on the duplicate policy. Mr. Bull did not receive this check until December 18, 2006. Mr. Bull subsequently returned the check to Allstate who still holds the money.

On October 14, 2006, Allstate issued a letter to Mr. Bull acknowledging that the two policies Mr. Bull applied for were issued to the 2435 Egret Street property even though he had applied for flood insurance coverage on both the 2435 Egret Street property and the 2431 Egret Street property separately.

Neither Allstate nor FEMA has ever attempted to reform the policy in accordance with Section U (Duplicate Policies Not Allowed) of the 2435 Egret Street SFIP or Section G

(Reduction and Reformation of Coverage) of the allegedly valid 2431 Egret Street SFIP.

**B.      Procedural History**

The Bulls filed suit against Allstate and Allstate Agent Teri Fear on September 27, 2007. On March 5, 2008, Mrs. Fear filed a Motion for Summary Judgment which was granted by this Court on April 22, 2008, holding that the Bull's claims against Mrs. Fear are preempted by La. R.S. 9:5606 (Claim by insured against insurance agent must be made within one year of act or omission). Subsequently, a pretrial conference was held on August 11, 2008 in which the Court ordered both parties to submit cross motions for summary judgment by November 7, 2008.

**C.      Plaintiff's Contentions**

The Bulls contend the SFIP they applied for on the 2431 Egret Street property was valid and effective on the day of their loss, September 24, 2005. They argue that no SFIP was ever issued for the 2431 Egret Street property due to the fault of Allstate. In support of this contention, the Bulls claim that they timely made partial payment on the premium for the 2431 Egret Street SFIP. Allstate allegedly violated the terms of Section G (Reduction and Reformation of Coverage) of the 2431 Egret Street SFIP by not allowing them to pay the remainder of the premium due and, in turn, to collect the $60,0000.00 policy limit as applied for on the 2431 Egret Street property. In the alternative, the Bulls argue Allstate violated the terms of Section U (Duplicate Policies Prohibited) of the 2435 Egret Street SFIP by not allowing Plaintiffs the option to add the policy limits of the duplicate 2435 Egret Street SFIP to the preexisting 2435 Egret Street SFIP.

The Bulls first argue that the allegedly valid 2431 Egret Street SFIP applied for should be reformed under Section G of that policy to conform to the Application and Certificate of Proof

for the 2431 Egret Street SFIP as applied for. They contend that their failure to timely pay the premium due on the 2431 Egret Street SFIP was the fault of Allstate. In support of this contention, the Bulls note that Agent Fear explicitly advised them that the premiums for *both* policies would be paid *at the closing* of the loan which secured the 2435 Egret Street property. The Bulls further claim Agent Fear wrote this down (Court Doc. 19-4, Exhibit F).

The Bulls also claim that the FEMA underwriting department failed to notice that an insufficient premium had been paid for the 2431 Egret Street property and that they failed to follow their own procedures to correct this oversight. According to the Bulls, their alleged "partial payment" (the $501.00 out of the $688.00 due on the 2431 Egret Street SFIP, paid by Cameron State Bank to Allstate on December 2, 2005) does not render the policy void, but does put Section G of the policy into force. The Bulls argue that the $501.00 paid by the Bank should have been applied to the 2431 Egret Street policy thereby triggering Section G of that policy and allowing them to pay the difference.

The Bulls assert that Section G of the policy provides for the reformation to comply with the intent of the parties at the time for the application, regardless of whether the "insufficient premium" is discovered before or after the loss. (Court Doc. 19-3, pg. 8). The Bulls contend the $501.00 sent by the Bank to Allstate amounts to their partial payment of the $688.00 premium due on the 2431 Egret Street SFIP. The Bulls do not dispute that they failed to pay any premium at the time of application. Rather, they believe the bank payment of $501.00 should have been credited to the 2431 Egret Street SFIP and that they should have been sent a bill for the remaining $187.00 due and given thirty days to pay it pursuant to Section G.

The Bulls acknowledge that, pursuant to 44 CFR § 61.11©, the earliest date the 2431

SFIP could have become effective was September 24, 2005 (thirty days after the August 25, 2005 date of application). They further acknowledge that the 2431 SFIP could not become effective on September 24, 2005 unless the $688.00 premium (or part of the premium) was paid to Allstate prior to September 24, 2005. Though they admit that no payment was made by September 24, 2005, the Bulls contend the amount they paid by that date ($0.00) qualifies as partial payment necessary to trigger Section G of the allegedly valid 2431 Egret Street SFIP.

The Bulls next argue that Section U of the policy, entitled "Duplicate Policies Not Allowed," contains a provision which should have allowed them to add the policy limits of the duplicate SFIP to the original, thereby increasing the policy limits for the 2435 Egret Street property. They contend Allstate erred when it did not give the Bulls written notice of their opportunity to utilize the benefits of Section U. It is the Bull's belief that the procedure FEMA followed in deciding to reject Mr. Bull's request for increased coverage under Section U applies only when the duplicate policy is *knowingly* created. The Bulls reiterate to the Court that their duplicate policy was *unknowingly* created as required by Section U.

**D.    Defendant's Contentions**

Allstate contends the Bulls failed to timely pay the premium due on the 2431 Egret SFIP such that a SFIP on that property would be in force and effect on September 24, 2005, when Hurricane Rita came ashore. They further contend that, even if the Bulls claims against Agent Fear were viable, they are not imputable to Allstate because of the structure of the National Flood Insurance Program ("NFIP") and 44 C.F.R. § 61.5(e)

Allstate argues that the Bull's own Statement of Uncontested Facts demonstrates that the they did not pay the premium for *either* SFIP before November 2005. (Court Doc. 19-2, par. i-

k).  As to the 2431 Egret Street SFIP, Allstate notes that the clear language of 44 CFR § 61.11(c)

states that a wholly new SFIP (like the 2431 Egret Street SFIP) "will be effective thirty days after

the application date and the presentment of payment of premium."  Allstate notes that, pursuant

to 44 C.F.R § 61.11(c), the Bulls would have had to pay the $688.00 premium due on the 2431

SFIP by September 24, 2005 in order for that policy to be effective.   As to the 2435 Egret Street

SFIP, Allstate notes that the clear language of 44 C.F.R § 61.11(b) states that a SFIP "made in

connection with a loan renewal (like the 2435 Egret Street SFIP) shall become effective at the

date of the loan closing."  Allstate avers that it made an error in issuing the 2435 Egret Street

SFIP since that policy became effective at the loan closing in November (well past the

September, 24, 2005 date of loss) pursuant to 44 C.F.R § 61.11(b).

Allstate contends that the Bulls had a duty to familiarize themselves with Title 44 of the

C.F.R.  Had the Bulls reviewed Title 44 of the C.F.R, they allegedly would have understood that

(a) that the $688.00 premium due on the 2431 Egret Street SFIP had to be paid by September 24,

2005 in order for that policy to be effective and (b) the statements made by Agent Fear as to the

closing date for the 2431 Egret Street SFIP were misrepresentations which could not legally bind

Allstate and

Allstate directs the Court to *Federal Crops Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85

(1947).  In *Merrill*, the respondents applied for crop insurance through the Federal Crop

Insurance Corporation.  The Committee, acting as agent for the petitioner/Corporation, advised

respondents that their entire crop was insurable, even though "reseeded" wheat crop was not

insurable under the Wheat Crop Insurance Regulations (the Regulations were not part of the

respondent's crop insurance policy itself).  After the respondent's crops were destroyed by

drought, the Corporation, after discovering that the respondent's acreage had been reseeded, refused to pay the loss citing the Regulation which prohibited crop insurance coverage for reseeded wheat. The respondents subsequently sued the Corporation arguing that (a) they reasonably believed that their entire crop was insurable based on representations made by the Committee and that (b) they had no actual knowledge of the Regulations which precluded insurance coverage for reseeded wheat. The Supreme Court subsequently ruled in favor of the Corporation, holding that "anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Merrill* at 384. The Court further held that "(j)ust as everyone is charged with knowledge of the United States Statutes at large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. s 307, 44 U.S.C.A. s 307." *Id*. In the instant action, Allstate argues that, like the respondents in *Merrill*, the Bulls had a duty to familiarize themselves with the premium due date requirements found in 44 CFR 61.11(c), since the "appearance of rules and regulations in the Federal Register gives legal notice of their contents."

Allstate further directs this Court to *Lawrence v. Fidelity National Ins. Co.*, 2007 WL 1741785 (E.D. La June 11, 2007) wherein an insured brought claims against a WYO carrier for allegedly failing to advise of the existence of a preferred risk policy. In granting the WYO carrier's motion for summary judgment, The *Lawrence* Court held that:

> "because the Plaintiffs did not properly familiarize themselves with the NFIP, they cannot successfully assert a detrimental reliance or any other extra-contractual state law claim. This conclusion is further strengthened by the 5th Circuit precedent that hold that extra-contractual state law claims that stem from an insurer's handling of an insured's claim for flood damages are preempted by the NFIA. See *Wright v. Allstate Inc. Co.*, 415 F.3d 384, 389 (5h Cir. 2005). Thus,

Fidelity's motion should be granted in its entirety." *Lawrence v. Fedelity Nat. Ins. Co.*, 2007 WL 1741785 at *6 (E.D. La. June 11, 2007).

Allstate claims the bottom line is that, like the plaintiff in *Lawrence*, the Bulls had a clear duty to familiarize themselves with the provisions of Title 44 of the C.F.R. governing SFIP's. Allstate believes that, had the Bulls read Title 44 of the C.F.R., they would have known that the premium due on the 2431 Egret Street SFIP had to be paid by September 24, 2005 in order for that policy to become effective.

Allstate next argues that any claims the Bulls may have against Agent Fear for her alleged negligence may not be imputed to Allstate. Specifically, they contend that any claims the Bulls may potentially have had against Agent Fear are not imputable to Allstate because of the structure of the NFIP.

Allstate directs the Court to 44 C.F.R. § 61.13(e) which states that "No oral or written binder shall be effective unless issued with express authorization of the administrator." Allstate notes that they cannot "waive, alter, or vary any terms of the SFIP or the federal rules and regulations." 44 C.F.R. § 61.13(e) and 44 C.F.R Pt. 61, App. A91), Article VII(D). Allstate claims their role in the flood insurance business is that of a WYO carrier participating in the NFIP, appearing herein as a "fiscal agent of the USA" (See 42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951 at 953 (5th Cir. 1998)), and at the expense of the federal treasury. Allstate avers that it is a signatory of the *Arrangement* with FEMA and as such is authorized to issue the federal government's SFIP's. The *Arrangement* is a codified agreement between FEMA and each and every WYO carrier found at 44 C.F.R. Pt. 62, App. A (Oct. 1, 2004 ed.). All policies of flood insurance issued by Allstate are SFIP's. Allstate notes that the NFIP is an operation of the federal government, administered by FEMA, and subsidized by federal taxpayers, with all

payments coming from the U.S. Treasury. Further, Allstate contends they are a fiscal agent of the USA by statute. Allstate argues that these statutory and regulatory policy provisions cannot be ignored as it is well established that it is the duty of all courts to observe the conditions defined by Congress for charging the public treasury. *Forman v. FEMA*, 138 F.3d 543, 545 (5th Cir. 1998), *Gowland*, 143 F.3d at FN8, and *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386 (9th Cir. 2000), *cert. denied* 531 U.S. 927 (2000), all of which explain how the Appropriations Clause of the U.S. Constitution and Supreme Court's decision in *Federal Crops Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947) and *Office of Personnel Mgmt v. Richmond*, 496 U.S. 414, 424 (1990) (discussing constitutional underpinnings of the *Merrill* doctrine) apply to cases involving the NFIP.

Allstate contends that claims arising out of flooding events against WYO carriers are completely the province of the NFIP. In addition, Allstate notes that the NFIP is funded by the United States government - not Allstate. Allstate's role as a WYO carrier is to facilitate and assist the operation of the federal government's program, including the enforcement of applicable flood insurance regulations found in Title 44 of the C.F.R.

Allstate further notes that 44 CFR § 61.5(e) dictates that the duties of the agent are to act as an agent for the insured, *not* as an agent for the federal government, FEMA, or a servicing agent. Allegedly, the difference between having the WYO carrier act as the fiscal agent of the federal government and having the duly licensed insurance agent act for the insured is so that each party to this policy of insurance has its own separate insurance professional to assist it. Allstate believes that taking into account 44 CFR § 61.5(e) with the National Flood Insurance Act of 1968 ensures each party is represented by an insurance professional. Furthermore, it

creates a division of liability which the federal government will not assume. Allstate believes

this is clear in light of Congress' addition of 42 USDC § 4081(c) whereby the federal

government "may not hold harmless or indemnify an agent or a broker for his or her error or

omission." Allstate notes that the 5th Circuit has opined that Section 4081(c) "is plainly limited

to claims against agents and brokers, as distinct from WYO's." *Wright v. Allstate Ins. Co.*, 415

F.3d 384, 388 (5th Cir. 2002).

Allstate cites *Demouy v. Allstate Ins. Co.*, 2008 WL 3851594 (E.D. La. Aug. 12, 2008)

which allegedly addresses this very issue regarding claims of vicarious liability of a WYO

carrier. The *Demouy* Court opined that:

> "The Court does recognize the potential for confusion and inequities present in a
> legal regime under which insurance agents act as the agents of the insurance
> company for homeowner's policies, but when they turn around to act as the agents
> of the purchasers of a flood policy for what may be the same property (all the
> while working out of the same office, with the same business cards and insurance
> company signs overhead). However, the law is clear, and Allstate is entitled to
> judgment as a matter of law on all claims against it relating to the alleged flood
> insurance policy." *Demouy* at *3

Allstate contends that, even if the agent did, in fact, mislead them like the agents in *Demouy*,

such liability cannot be imputed to the WYO carrier, who is the statutory fiscal agent of the

United States pursuant to 42 U.S.C. § 4071(a)(1).

In conclusion, Allstate notes that federal law completely controls their actions based upon

Allstate's status as fiscal agent of the United States in the selling and marketing of flood

insurance policies. Allstate points out that nowhere in the NFIP, 42 U.S.C. § 4001, Title 44 of

the Code of Federal Regulations, or federal common law is there a duty on the part of the WYO

carrier to advise an insured. Additionally, 44 CFR § 61.5(e) and 42 U.S.C. §4081(c) allegedly

preclude any claim that the insurance agent or broker acts for the fiscal agent of the USA, the

WYO carrier, Allstate.

**D.      Law/Analysis**

The two issues in this case are: (1) Whether the Bulls timely paid the premium due on the 2431 Egret SFIP they had applied for such that a SFIP on that property would be in force and effect on September 24, 2005, when Hurricane Rita came ashore and (2) Whether Allstate violated Section U (Duplicate Policies Prohibites) of the 2435 Egret Street SFIP by failing to afford the Bulls the option to increase the coverage on the 2435 Egret Street SFIP based on the issuance of a duplicate policy issued on the 2435 Egret Street property. In order for the Bulls to defeat Allstate's Motion for Summary Judgment, they must show that the 2431 Egret Street SFIP they had applied was in effect on September 24, 2005. In the alternative, the Bulls must show that Allstate erred in not allowing them to utilize the protections afforded by Section U of the 2435 Egret Street SFIP. In order for Allstate to defeat the Bull's Motion for Summary Judgment, Allstate must show that the 2431 Egret Street SFIP was not effective on September 24, 2005. Allstate must also show they were not bound to offer the Bulls the protections afforded by Section U of the 2435 Egret Street SFIP. The Court hereby finds that (1) the 2431 Egret Street SFIP was never effective and that (2) Allstate erred by not affording the Bulls the options afforded by Section U of the 2435 Egret Street SFIP for the following reasons:

**I.  The 2431 Egret Street SFIP Was Never Effective**

44 CFR § 61.11 states in pertinent part:

§ 61.11 Effective date and time of coverage under the Standard Flood Insurance Policy – New Business Applications and Endorsements.

(b) Where the initial purchase of flood insurance is in connection with the making, increasing, extension, or renewal of a loan, the coverage with respect to the property which is subject of the loan shall be effective as of the time of the loan

closing, provided the written request for the coverage is received by the NFIP and the flood insurance policy is applied for and the presentment of payment of premium is made at or prior to the loan closing.

(c)   Except as provided by paragraphs (a) and (b) of this section, the effective date and time of any new policy or added coverage or increase in the amount of coverage shall be 12:01 a.m. (local time) on the 30th calendar day after the application date and the presentment of payment of premium; for example, a flood insurance policy applied for with the payment of the premium on May 1 will become effective at 12:01 a.m. on May 31.

The purchase of the Bull's flood insurance policy for the 2435 Egret Street property was made in connection with the renewal of a loan. 44 CFR § 61.11(b) dictates that SFIP's "made in connection with the renewal of a loan...shall be effective *at the time of closing*..." As such, the SFIP for the 2435 Egret Street property became effective in November 2005 when the loan closing took place.

Unlike the 2435 Egret Street SFIP, the Bulls purchase of the flood insurance policy for the 2431 Egret Street property was a wholly new policy and *not* based on the renewal of a loan. 44 CFR § 61.11(c) dictates that wholly new SFIP shall be effective at "12:01 a.m. (local time) on the 30th calendar day after the application date *and* the presentment of payment of premium." The Bulls applied for the 2431 Egret Street SFIP on August 25, 2005.  Under the letter 44 CFR § 61.11(c), the Bulls had to pay the $688.00 premium due on the 2431 Egret Street SFIP within thirty (30) days from the August 25, 2005 application date (September 24, 2005)  in order for the 2431 Egret Street SFIP to have been effective on September 24, 2005 (30 days after application). By the Bull's own admission, they did not pay or attempt to make partial payment or pay the full $688.00 premium due on 2431 Egret Street SFIP prior September 24, 2005.  The Court hereby finds that it was impossible for the 2431 Egret Street policy to have been effective on September 24, 2005 since no premium or partial premium payment on the 2431 Egret Street SFIP was

timely made on or before that day pursuant to 44 CFR § 61.11©.

The Court will not address the Bull's argument that they are entitled to reform the 2431 Egret Street SFIP under Section G of that policy since the 2431 Egret Street policy never became effective. Clearly, any such argument is without merit.

## II. The Bulls Cannot Rely on the Misrepresentations of Allstate Agent Teri Fear or Their Own Ignorance as a Defense for failing to Review 44 CFR § 61.11 (c) .

The Bulls argue that (1) the premium payment for the 2431 Egret Street SFIP was untimely because they relied on Agent Fear's representations to them that the premium on the 2431 Egret Street SFIP was due at the closing of the loan which secured the 2435 Egret Street SFIP and (2) there was no way for them to know the difference in effective dates for an SFIP based on a loan renewal as opposed to a wholly new SFIP. The Bulls contend that the body of SFIP itself gives no indication of the differences in effective dates for the two types of SFIP's. In other words, the Bulls claim they had no way of knowing about the premium requirements of 44 C.F.R. §§ 61.11(b) and 61.11(c)

The Bulls argue they would have timely paid the premium due on the 2431 Egret Street SFIP but for their reliance on Agent Fear's oral and written assurance that the premium on the 2431 Egret Street SFIP would be due at the closing of the loan for the 2435 Egret Street SFIP. The Bulls contend it is the duty of the agent to collect the premium. The Court finds this argument not legally sound.

In *Richmond Printing LLC v. Director Federal Emergency Management Agency*, 72 Fed.Appx. 92, 2003 WL 21697457 (C.A.5 (Tex.)), the Fifth Circuit held that an insured's reliance on the misrepresentations of an insurance claim's adjuster were not reasonable. In that case, the plaintiffs alleged the adjusters made material misrepresentations concerning what

information they needed to provide to FEMA. Specifically, the *Richmond* plaintiffs argued that

the adjusters failed to tell them that a proper proof of loss form had to be filed within 60 days of

loss as required by Title 44 of the Code of Federal Regulations which regulates the terms of the

SFIP. In holding that the insured's reliance on the adjusters statements were not reasonable, the

Court stated:

> "Richmond was insured by the federal government through the NFIP. As the
> Supreme Court has stated, "those who deal with the Government are expected to
> know the law and may not rely on the conduct of government agents contrary to the
> law." (emphasis added) *Heckler v. Community Health Servs.* 467 U.S. 51, 63, 104
> S.Ct. 2218, 81 L.Ed.2d 42 (1984). Thus, the special nature of the insurance
> relationship in this case charges the insured with the duty of understanding the
> terms of the SFIP so that he may deal with the government and its appointed
> agents." *Richmond* at 97-98.

The *Richmond* Court further opined:

> "...the SFIP is published in its entirety in the CFR. Unlike a typical automobile or
> health insurance policy, therefore, the insured has an *additional outlet* (emphasis
> added) to which to turn to obtain information about the terms of the policy. In a
> similar situation where the federal government oversaw a wheat insurance program,
> the Supreme Court held that the fact that the Wheat Crop Insurance Regulations
> were published in the Federal Register made them "binding on all who come within
> the Federal Crop Insurance Act, regardless of actual knowledge of what is in the
> regulations or of the hardship resulting from ignorance." *Fed. Crop Ins. Corp. v.
> Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947); see also *Flick v. Liberty
> Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir. 2000) (applying the *Merrill* rule in
> the context of the NFIP)." *Richmond* at 98.

The *Richmond* Court further concluded:

> "The unique situation presented by the NFIP creates additional responsibilities for
> the insured. One of those responsibilities is that, given that the insured is doing
> business with the government and that the terms of the SFIP are published in the
> CFR, the insured has a duty to read and understand the terms of the SFIP."
> *Richmond* at 98.

Similarly, our sister District addressed a factually similar case to the instant action in

*Larmann v. State Farm Insurance Co.*, 2005 WL 357191 (E.D. La). In *Larmann*, the plaintiffs

filed suit against State Farm alleging that their Allstate Agent made extra-contractual

misrepresentations to them as to the extent of flood insurance coverage on their home. After a

Tropical Storm flooded their property, the plaintiffs filed a claim under their SFIP only to find

out that, contrary to the statements made by their agent, only a small portion of the house was

actually covered by the policy. In holding for the Agents, the Court opined that the plaintiffs

were:

> "charged with the constructive knowledge of the provisions of the SFIP
> '*regardless of actual knowledge* (emphasis added) of what is in the regulations *or
> of the hardship resulting from ignorant innocence*.'" (emphasis added) *Richmond
> Printing LLC v. Dir. FEMA*, 72 Fed.Appx. 92, 2003 WL 21697457 (C.A.5 (Tex.))
> (quoting *Merrill*, 332 U.S. at 385). Any reliance by the plaintiffs on the
> misrepresentations of the Agents is "unreasonable as a matter of law." *Id*.
> Therefore, there are no genuine issues of material fact as to the Agents."
> *Larmann* at *5.

In the instant action, as in *Richmond* and *Larmann*, the Court finds that any reliance the

Bulls had on the misrepresentations of Agent Fear were unreasonable as a matter of law. Even if

such misrepresentations were, in fact, made, this Court is bound by the Supreme Court precedent

set in *Merrill*. The Court is further compelled by the Ninth Circuit case of *Flick v. Liberty

Mutual Fire Ins. Co.*, 205 F.3d 386 (9th Cir. 2000) wherein the Court explains how the *Merrill*

doctrine extends to cases involving the NFIP. Simply stated, the Bulls had a legal duty to read,

familiarize, and understand the terms of the SFIP regardless of any assurance Agent Fear gave

them. Where federal funds are implicated, the person seeking those funds is obligated to

familiarize himself with the legal requirements for receipt of such funds. *Heckler v. Cmty Health

Services of Crawford Count, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

Further, the terms of the SFIP are public record published in Title 44 of the Code of Federal

Regulations. The clear language of the Bull's SFIP itself states that the SFIP is part of the NFIP

which is "administered under the Act and *applicable Federal Regulations in Title 44 of the Code of Federal Regulations, Subchapter B.*" (emphasis added) (Court Doc. 19-5, Exhibit L, pg. 6). This language was specifically added to the body of the SFIP to notify insureds that their SFIP's are governed by not only the stipulations in the SFIP itself, but also the rules governing SFIP's within the body of Title 44 of the C.F.R. It is worth mention that Mr. Bull is a licensed attorney and, therefore, had an even higher duty than a non-legally trained insured to familiarize himself with Title 44 of the CFR. It stands to reason that, had Mr. Bull reviewed Title 44 of the C.F.R, he would have been able to discern that the statements made by Agent Fear were not accurate statements as to when premium for the 2431 Egret Street SFIP was due. Mr. Bull's decision to take Agent Fear on her word was a decision made on his own volition. Thus, it cannot be said that the Bull's failure to timely pay the $688.00 premium due on the 2431 Egret Street SFIP was the fault of Allstate as the Bulls contend.

The Bulls next argue that they had no way of knowing the difference between the due dates for the two policies because the SFIP itself does not differentiate between the effective dates for a SFIP made in connection with a loan renewal as opposed to a wholly new SFIP. While it is true that the difference between the premium due dates for the two types of policies cannot be found within the four corners of the SFIP itself, "(the Bulls had) an additional outlet to which to turn to obtain information about the terms of the policy," namely, federal statutes and regulations. *Larmann v. State Farm Insurance Co.*, 2005 WL 357191 at *4 (E.D. La Feb. 11, 2005) (quoting *Richmond Printing, L.L.C. v. Director, FEMA*, 72 Fed Appx. 92 (5th Cir. 2003)). Had the Bulls reviewed Title 44 of the C.F.R. as they were legally required to do, they would have been aware of the correct due date for the premium owed on the 2431 Egret Street SFIP.

The Bull's decision to take Agent Fear on her word and not consult Title 44 of the C.F.R. was a decision made on their own volition. Thus, it cannot be said that Allstate prevented the Bulls from timely paying the premium due on the 2431 Egret Street SFIP as a result of their alleged omission of 44 C.F.R. §§ 61.11(b) and 61.11© from the body of the SFIP. Clearly, the Bulls failure to timely pay the premium due was their own mistake and not the fault of Allstate as the Bulls contend.

### III. The Bulls Claims of Agent Fear's Alleged Negligence Are Not Imputable to Allstate.

The Bulls argue that the alleged negligent misrepresentations made to them by Agent Fear are imputable Allstate. The Court hereby finds this argument not legally sound as the structure of the NFIP precludes the imputation of any claims against Agent Fear to Allstate.

The Court in *Demouy v. Allstate Ins. Co.*, 2008 WL 3851594 (E.D. La. Aug. 12, 2008) recently addressed this very issue regarding claims of vicarious liability against Allstate for the negligent acts of, a WYO carrier. In explaining Allstate's role as a WYO carrier, the Court explained:

> "...Allstate is a WYO carrier under the National Flood Insurance Program ("NFIP"). As such, it is authorized to issued flood policies pursuant to a codified Arrangement with the Federal Emergency Management Agency ("FEMA"). 44 C.F.R. Pt. 62, App. A. The flood policy, or SFIP, is codified at 44 C.F.R. Part 61, App. A(1). A WYO company is directly responsible for the "adjustment, settlement, payment and defense of all claims arising form policies of flood insurance it issues under the Program, based upon the terms and conditions of the [SFIP]." 44 C.F.R. § 62.23(d). A WYO company acts as a fiscal agent of the United States, 42 U.S.C. § 4071; *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998), but not as its general agent, and is solely responsible for its obligations to its insured under any flood insurance policies issued under agreements entered into with the Federal Insurance Administrator. 44 C.F.R. § 62.23(g). Any payments for a flood claim under an SFIP are paid with U.S. Treasury Funds. See 44 C.F.R. Pt. 62, App. A, Arts. II and III." *Demouy* at *2

The <u>Demouy</u> Court further explained that:

> "A WYO company like Allstate is prohibited from altering, waiving, or amending the terms of the SFIP without the express written consent of the Federal Insurance Administrator. 44 C.F.R. § 61.13(d); <u>Gowland</u> 143 F.3d at 953" <u>Demouy</u> at *2

The reasoning of the <u>Demouy</u> Court clearly explains two things: First, Allstate, as a WYO carrier, is bound by the terms and conditions which govern the government-backed SFIP's they issue to the public. Included in these conditions are the relevant provisions found in Title 44 of the C.F.R. Secondly, Allstate is powerless to ignore the applicable SFIP regulations found in Title 44 of the C.F.R. as the Bulls now ask us to do. It is well established principle within the Fifth Circuit that "it is a duty for all courts to observe the conditions defined by Congress for charging the public treasury." <u>Forman v. FEMA</u>, 138 F.3d 543, 545 (5th Cir. 1998). Clearly, federal funds would have been used if Allstate had chosen to honor the 2431 Egret Street SFIP. Because federal funds would have been implicated if Allstate had paid the limits on the 2431 Egret Street SFIP, Allstate had no choice but to abide by the regulations which govern SFIP's as set forth in Title 44 of the C.F.R. I Allstate was legally required to follow the regulations set forth in Title 44 of the C.F.R. As such, the Court need only review the relevant provisions of Title 44 of the C.F.R. insofar as they relate to the Bulls ability to impute their negligent misrepresentation claim against Agent Fear to Allstate.

44 C.F.R. § 61.13(e) and 44 C.F.R. Pt. 61, App. A(1), Art. VVII(D) state that Allstate cannot "waive, alter, or vary any terms of the SFIP or the federal rules and regulations." Applied to the instant action, this means Allstate had no choice but to abide by all of the provisions within the National Flood Insurance Program, the SFIP, the National Flood Insurance Act of 1968, and, most relevant to the case at hand, the provisions of Title 44 of the C.F.R. that regulate SFIP's.

44 C.F.R. § 61.13(e) states that "No oral or written binder shall be effective unless issued with express authorization of the administrator." Applied to the instant action, this provision literally means that the alleged misrepresentations made by Agent Fear to the Bulls are in no way binding on Allstate. In other words, 44 C.F.R. § 61.13(e) effectively bars any imputation of Agent Fear's alleged negligent misrepresentations to Allstate.

Lastly, 44 C.F.R. § 61.5(e) states that the duties of the agent are to "act as an agent for the insured, *not* as an agent for the federal government, FEMA, or a servicing agent." By its own terms, 44 C.F.R. §61.5(e) effectively negates any vicarious liability claim by the Bulls against Allstate for Agent Fear's negligence because Agent Fear had no duty to act as an agent of Allstate. In the context of the entire National Flood Insurance Act of 1968, 44 C.F.R. §61.5(e) ensures that each party in negotiations for a SFIP is represented by an insurance professional. The provision does *not* state that is the "the duty of the agent to collect the premium" as the Bulls claim. (Court Doc. 19-3, pg. 7). The relationship between a licensed insurance agent who sells SFIP's and a WYO carrier creates a division of liability for which the federal government will not assume. This is clear in light of Congress' addition of 42 U.S.C. §4081(c) whereby the federal government "may not hold harmless or indemnify an agent or broker for his or her error or omission." The Fifth Circuit has opined that §4081(c) "is plainly limited to claims against agents and brokers, as distinct from WYO's." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005). This precedent set in *Wright* precludes the imputation of claims against Agent Fear to Allstate because federal funds would be implicated (thereby triggering the aforementioned provisions of Title 44 of the C.F.R.) if the Bulls were allowed to make this claim. Clearly, the Bull's understanding of the relationship between an insurance agent who sells SFIP's and a

WYO provider, like Allstate, is misplaced. The _Demouy_ Court recognized the potential for

insureds to misunderstand this relationship in its written reasons for granting summary judgment

in favor of agents who allegedly negligently made misrepresentations to plaintiff's (regarding

their SFIP). The _Demouy_ Court opined

> "The Court does recognize the potential for confusion and inequities present in a
> legal regime under which insurance agents act as the agents of the insurance
> company for homeowner's policies, but when they turn around to act as the agents
> of the purchasers of a flood policy for what may be the same property (all the
> while working out of the same office, with the same business cards and insurance
> company signs overhead). However, the law is clear, and Allstate is entitled to
> judgment as a matter of law on all claims against it relating to the alleged flood
> insurance policy." _Demouy_ at *5

As confusing as this relationship may be to the Bulls, it is nonetheless binding law which this

Court must follow.

## IV. Allstate Erred in Not Affording the Bulls Coverage Under Section U of the 2435 Egret Street SFIP

As previously stated, the 2435 Egret Street property did not become effective until the

Bulls wrote Allstate a check for the $510.00 premium on that policy at the loan closing in

November 2005. This effective date for the 2435 Egret Street property was well past the Bull's

date of loss (September 24, 2005 - the day Hurricane Rita hit). Nonetheless, Allstate honored

the 2435 Egret Street policy and paid the Bulls the full limits retroactive to their date of loss.

Allstate now claims they mistakenly issued the first 2534 Egret Street SFIP and, therefore, no

duplicate SFIP on that policy could ever have been effective. The Court finds this argument

unpersuasive.

While it may be true that Allstate potentially could have opted to deny the Bulls coverage

on the 2435 Egret Street SFIP, since the 2435 Egret Street policy arguably did not become

effective until November, Allstate did not opt to do so. Instead, Allstate paid the limits on that policy. Accordingly, the Court must consider the 2435 Egret Street SFIP as a valid SFIP since Allstate also chose to validate that policy .

The Bulls now contend that (1) the duplicate policy issued on the 2435 Egret Street property should be reformed to conform to the Application and Certificate of Proof for the 2431 Egret Street SFIP pursuant to Section U of the 2435 Egret Street SFIP or (2) they should be allowed to add the coverage of the duplicate policy issued on the 2435 Egret Street SFIP to the original 2435 Egret Street SFIP. The Court will not address the Bulls argument that the duplicate 2435 Egret Street SFIP should be reformed to conform to the Application the 2431 Egret Street SFIP as this argument is without merit. The Court hereby finds that the duplicate 2435 Egret Street SFIP was, in fact, unknowingly created and that Allstate erred by not allowing the Bulls the opportunity to increase their coverage under Sections U(1)(a) or U(1)(b) of the 2435 Egret Street policy.

Section U of the valid 2435 Egret Street SFIP reads as follows:

**U. Duplicate Policies Not Allowed**
1. We will not insure your property under more than one NFIP policy.

If we find that the duplication was *not knowingly created* (emphasis added), we will give you *written notice* (emphasis added). The notice will advise you that you may choose one of several options under the following procedures:

a. If you choose to keep in effect the policy with the earlier effective date, you may also choose to add the coverage limits of the later policy to the limits of the earlier policy. The change will become effective as of the effective date of the later policy.
b. If you choose to keep in effect the policy with the later effective date, you may also choose to add the coverage limits of the earlier policy to the limits of the later policy. The change will be effective as of the effective date of the later policy.

In either case, you must pay the pro rata premium for the increased coverage limits *within 30 days of the written notice* (emphasis added). In no event will the resulting coverage limits exceed the permissible limits of coverage under the Act or your insurable interest, whichever is less.

We will make a refund to you, according to applicable NFIP rules, of the premium for the policy not being kept in effect.

2. Your option under Condition U. Duplicate Policies Not Allowed to elect which NFIP policy to keep in effect *does not apply when duplicates have knowingly been created* (emphasis added). Losses occurring under such circumstances will be adjusted according to the terms and conditions of the earlier policy. The policy with the later effective date will be cancelled.

The purpose of Section U is to prevent insureds from purchasing multiple SFIP's which insure the same property. It would be imprudent for Allstate to allow insureds to take out multiple polices on the same property as doing so would effectively allow insureds to "double dip" in the event of a loss. That said, Section U of the 2435 Egret Street SFIP clearly outlines an exception to the SFIP's prohibition against duplicate policies wherein a duplicate policy may be rendered effective. In order to qualify for this exception, the insured must first prove that the duplicate policy was not "knowingly created." Upon such a finding, Allstate must then give the insured written notice of his/her ability to add the coverage of one of the duplicate policies to the other under Section U(1)(a) or U(1)(b). The insured is then required to "pay the pro rata premium for the increased coverage limits *within 30 days* of the written notice." Once these procedural requirements are met, Allstate must "refund to (the insured), according to applicable NFIP rules, the premium for the policy not being kept in effect." Upon review of the evidentiary record in this case, the Court hereby finds that Allstate erred in not affording the Bulls the opportunity to utilize Sections U(1)(a) or U(1)(b) of the 2435 Egret Street policy as the

Bulls met each requirement of Section U.

First, Section U was triggered because the duplicate policy was not "knowingly created." It is well established that the federal statutory and common law governs the interpretation of the SFIP. *Linder and Assocs., Inc. v. Aetna Cas. and Sur. Co.*, 166 F.3d 547, 550 (3ʳᵈ Cir. 1999) (citations omitted). These principals dictate that the SFIP is to be interpreted according to its plain, *unambiguous* (emphasis added) meaning. *Id*. The unambiguous meaning of the phrase "knowingly created" literally means that Section U will not apply to SFIP's which were intentionally created and the creator has knowledge of the formation of the new SFIP. In his sworn affidavit, Jason Raske, Team Flood Leader for Allstate Insurance Company, stated, "*through an error* (emphasis added) regarding the certificate of application for insurance number, an *inadvertent* (emphasis added) second SFIP, bearing no. 3800600607 (the duplicate 2435 Egret Street SFIP), in the coverage amount of $40,000.00 for the building and no contents was issued by Allstate for the 2435 Egret Street property." (See Court Doc. 17-3, par. 8). Allstate's admission that the duplicate policy was issued through"inadvertent error" leads this Court to find that the clear language of Mr. Raske's statement can have only one meaning: that the duplicate policy was, in fact, *not knowingly created* by Allstate. The Court further finds it clear that no ambiguity exists in the phrase "knowingly created" so as to prevent the Bulls from utilizing Section U of the 2435 Egret Street SFIP.

As the duplicate policy was admittedly not knowingly created, it is clear that Allstate further violated Section U of the 2435 Egret Street policy by (a) not sending the Bulls written notice of their ability to utilize Section U and (b) not giving the Bulls the opportunity to "pay the pro rata premium for the increased coverage limits within 30 days of the written notice." Instead

of giving the Bulls written notice of their ability to utilize the benefits of Section U, Allstate chose to unilaterally cancel the duplicate 2435 Egret Street policy. Allstate never gave the Bulls the opportunity to utilize Section U. Accordingly, the Court hereby finds that Allstate erred by failing to afford the Bulls the opportunity to utilize Section U(1)(a) or U(1)(b) of the 2435 Egret Street SFIP. Specifically, Allstate erred in not allowing the Bulls to add the coverage of the duplicate 2435 Egret Street SFIP to the original 2435 Egret Street SFIP or vice-versa.

## E. Conclusion

For the reasons more fully set forth above, Defendant Allstate's Cross Motion for Summary is **DENIED** and Plaintiff's Motion for Summary Judgment is **GRANTED**.

THUS DONE AND SIGNED in Lafayette, Louisiana, on the 6th day of August, 2009.

**JUDGE RICHARD T. HAIK, SR.**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**